Gants, J.
The plaintiff, Mass Printing and Forms, Inc. (“Mass Printing”), sold printed material costing $41,070.62 to the defendant RKS Health Ventures Corporation d/b/a Spence Center for Women’s Health (“RKS”), the parent company and sole shareholder of three Massachusetts corporations which operated primary care medical centers for women in the Boston metropolitan area: the defendants Spence Center Cambridge, Inc., Spence Center Wellesley, Inc., and Spence Center Braintree, Inc. (collectively, “the Spence Centers”).[1] On January 26, 1998, RKS and the three Spence Centers entered into an Assignment and •Assumption Agreement (“the Agreement”) with the defendants Partners Community Healthcare, Inc. and The Brigham and Women’s Hospital, Inc. (collectively, “Partners”) by which Partners was assigned most of the assets of RKS and the Spence Centers and assumed their liabilities “with respect to performance, ownership, use and possession from and after the Time of Closing of all Acquired Assets assigned or otherwise transferred to [Partners] as part of the Acquired Assets . . .” Agreement at 5-6. The Agreement specifically provided that RKS and the Spence Centers “shall retain responsibility for all obligations of [RKS and the Spence Centers] relating to the period prior to the Time of Closing . . .” Agreement at 6. In essence, Partners assumed the going-forward obligations but not those obligations, like the debt owed to Mass Printing, that related to the period prior to January 26,1998.
Mass Printing alleges that RKS and the Spence Centers have failed to pay its printing debt and has filed this complaint against them seeking payment. Mass Printing has also included Partners as defendants, alleging that Partners as a result of the Agreement has effectively assumed liability for the amount due to Mass Printing as the successor corporate entity under the de facto merger and has participated in a fraudulent conveyance for the purpose of defrauding Mass Printing. Mass Printing seeks to collect from Partners the amount due on its printing bill and treble damages and attorneys fees under G.L.c. 93A, §11.
Partners now moves for summary judgment as to the relevant claims. After hearing and for the reasons stated below, the defendants’ motion for summary judgment is DENIED IN PART AND ALLOWED IN PART.

DISCUSSION

Mass Printing’s Collection Claim

“There are three basic forms in which business acquisitions are structured: acquisition of stock, merger, and acquisition of assets.” Tafe, “The de facto Merger Doctrine Comes to Massachusetts Wherein the Exception to the Rule Becomes the Rule,” Boston Bar Journal, November/December 1998 at 12. With an acquisition of stock in a corporation, there is no change in the corporate entity, simply in the ownership of the shares of the corporate entity, so the acquired corporation remains responsible for all liabilities. Id. Pragmatically, this means that the purchaser who now controls the acquired corporation, although perhaps not liable directly, bears the burden of all corporate liabilities. Id. at 12-13.
With a typical merger, the company being acquired merges with and into the acquiring corporation, then goes out of existence, leaving the acquiring corporation to succeed by operation of law to all of the acquired corporation’s liabilities. Id. at 13; G.L.c. 156B, §80(b) (“surviving corporation shall be deemed to have assumed, and shall be liable for, all liabilities and obligations of each of the constituent corporations in the same manner and to the same extent as if such resulting or surviving corporation had itself incurred such liabilities or obligations”).
With an asset acquisition, the law traditionally presumes, with certain exceptions, that if the asset purchaser did not assume a liability by contract, the liability remains with the corporation selling the assets. Id., McCarthy v. Litton Industries Inc., 410 Mass. 15, 21 (1991); Cargill, Incorporated v. Beaver Coal & Oil Co., Inc., 424 Mass. 356, 359 (1997). As the Supreme Judicial Court declared in Cargill, Incorporated, “We adhere to traditional corporate law principles that the liabilities of a selling predecessor corporation are not imposed on the successor corporation which purchases its assets unless (1) the successor expressly or impliedly assumes liability of the predecessor, (2) the transaction is a de facto merger or consolidation, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid *756 liabilities of the predecessor.” Cargill, Incorporated v. Beaver Coal & Oil Co., Inc., 424 Mass. at 359.
In Cargill, however, the Supreme Judicial Court defined what evidence may be sufficient to prove the exception of a de facto merger or consolidation:
The factors that courts generally consider in determining whether to characterize an asset sale as a de facto merger are whether (1) there is a continuation of the enterprise of the seller corporation so that there is continuity of management, personnel, physical location, assets, and general business operations; whether (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; whether (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and whether (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation . . . No single factor is necessary or sufficient to establish a de facto merger.
Id. at 359-60. Partners concedes that there is evidence sufficient to raise a genuine issue of material fact as to factors 1, 3, and 4, since the Spence Centers effectively ceased operations after the assets purchase, the medical operations continued at the same locations with the same physicians and staff and Partners assumed those going-forward liabilities as to employment contracts, real estate leases, and equipment leases necessary to permit the medical centers to continue operations. Indeed, Partners contends that its only purpose in taking over what it understood to be a money-losing operation was to continue to operate the Spence Centers to provide continuous care to its patients.
In view of this concession, one would think that there should be no issue as to summary judgment, since Partners admits that three of the four factors identified by the Supreme Judicial Court to be pertinent in determining whether the transaction is a de facto merger are present in this case. Partners’ argument, in essence, is that, while this is what the Supreme Judicial Court said in Cargill, it cannot be what it meant. Partners argues, correctly, that these three factors (or at least one) are routinely present when one business acquires another through an acquisition of assets, and that, if these factors are sufficient to establish the de facto merger exception, then the exception will surely devour the rule. See also, Tafe at 25 (“Of the four factors that courts generally consider in determining whether to characterize an asset sale as a de facto merger, at least three are probably present in the vast majority of business acquisitions”). Partners declares that the Supreme Judicial Court would not define an exception so broadly that it devours a well-established rule without explaining its reasons for doing so.
It is indeed true that it has been a “settled rule of corporate law that, when one company purchases the assets of another, the purchaser does not thereby acquire the debts and liabilities of the seller.” McCarthy v. Litton Industries Inc., 410 Mass. at 21. It is also true that, with respect to the acquisition of a business through an acquisition of assets, the breadth of the de facto merger exception as defined in Cargill could devour this settled rule. See Tafe at 13, 25 (“while the de facto merger doctrine is said to be one of the exceptidlis to the general rule that liabilities of a corporation will not pass to the purchaser of its assets unless specifically assumed by such purchaser, the exception could well apply to so many cases as to overwhelm the general rule itself’). At the very least, since at least one of these factors almost always exists when one business acquires another through an acquisition of assets, and since the Supreme Judicial Court has declared in Cargill that “[n]o single factor is necessary or sufficient to establish a de facto merger,” Cargill at 360, summary judgment will almost never be warranted in a case like this in favor of the acquiring corporation against a putative creditor.[2]
While the Supreme Judicial Court in Cargill did not state that it was interpreting the de facto merger exception so broadly that it could devour the general rule, this Court generally presumes that the Supreme Judicial Court intends to do what it actually does. Indeed, in Cargill, the Supreme Judicial Court specifically declared, “We consider the fair remuneration of corporate creditors a policy worthy of advancement.” Id. at 362. It recognized “that there is often a tension between this goal and our strong interest in respecting corporate structures,” and concluded that, under certain circumstances, it would resolve such tension “in favor of an innocent creditor.” Id. In light of Cargill, Partners’ motion for summary judgment on its collection claim must be denied.
Partners also seeks to reduce the amount of Mass Printing’s debt that it may be liable for by $9,378.16, which is the amount attributable to goods and services provided to Spence Center Maryland, Inc., the corporation that operated the Spence Center in Maryland, which was not a party to the Agreement. However, Mass Printing has provided evidence that it only sold printed material to RKS, not to any individual Spence Center, and that RKS (and, via the de facto merger, Partners) is liable for the entirety of its debt, regardless of how it distributed this material among the various Spence Centers. Given this evidence, it would not be appropriate on summary judgment to reduce the amount of Mass Printing’s claim against Partners.

*757
Mass Printing's Fraudulent Transjer Claim Under G.L.c. 109A

Mass Printing has also brought a claim against Partners for damages under the Uniform Fraudulent Transfer Act, G.L.c. 109A, alleging that Partners’ purchase of the assets of RKS and the Spence Centers was fraudulent as to Mass Printing because it was done with the actual intent of RKS and the Spence Centers to defraud their creditors, including Mass Printing. Partners correctly observes that, under G.L.c. 109A, §9(b), Mass Printing is entitled to recover judgment on this claim only if the asset transferred had positive value. Partners contends that there is no evidence in the record to support the reasonable inference that the assets they purchased had positive value.
Partners has presented an expert affidavit attesting that each of the three Spence Centers had a negative present value as of the date of the Agreement — January 26, 1998 — and “that the future projected present value of the three Spence Centers net cash flows had a negative present value of approximately $3,829,000 as of the Closing Date based on the [Discounted Cash Flow] method.” Affidavit of Pierre Bogacz at 5. Mass Printing has provided no expert affidavit presenting a different valuation. The only affirmative evidence it presents to rebut this expert estimate is what it contends to be Exhibit A-1 to the Agreement, which reflects that the net value of the equipment from the three Centers transferred to Partners totaled $2,106,800.60. Partners vigorously contends that this is not Exhibit A- 1 to the Agreement' (indeed, it contends that there was no such Exhibit) and that it received only a fraction of this value in equipment assets. Partners, however, is in the troubling position of having to argue that, although it executed an Agreement that assigned to it “all personal properly, supplies and equipment owned by RKS on the premises of the Women’s Health Centers and used in connection with the operation of the Women’s Health Centers, ... all as set forth on Exhibit A-l attached hereto, ” (Agreement at 2), it knows of no Exhibit A-1 and executed the Agreement without knowing what personal properly, supplies, and equipment were being transferred. For purposes of this motion, this Court must consider Exhibit A-l to reflect the property transferred under the Agreement. Yet, the fact remains that, even if all this property were indeed transferred and was worth what Exhibit A-l declares, the assets transferred still had a negative present value of more than $1.7 million. Since viewing the evidence in the summary judgment record in the light most favorable to Mass Printing, there is no reasonable expectation that Mass Printing can prove that the transferred assets had a positive present value, Partners is entitled to summary judgment on this claim. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

Mass Printing’s Chapter 93A Claim

Under the Massachusetts Consumer Protection Act, G.L.c. 93A, §11, any person in trade or commerce who “suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two . . . [may bring a civil action].’’ G.L.c. 93A, §11. G.L.c. 93A, §2 makes unlawful any ”[u]nfair methods of competition and unfair acts or practices in the conduct of any trade or commerce . . .” G.L.c. 93A, §2. The Supreme Judicial Court has stated that “the following are ‘considerations to be used in determining whether a practice is to be deemed unfair: (1) whether the practice ... is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2). . . is immoral, unethical, oppressive, or unscrupulous; (3). . . causes substantial injury [to]. . . competitors or other businessmen.’ ” Datacomm Interface, Inc. v. Computerworld Inc., 396 Mass. 760, 778 (1986), quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975), which itself quotes 29 Fed. Reg. 8325, 8355 (1964).
It is not clear from either the Third Amended Complaint or Mass Printing’s brief on this motion what unfair or deceptive act, if any, Partners is alleged to have committed beyond engaging in what Mass Printing contends to be a fraudulent conveyance by purchasing the assets of RKS and the Spence Centers. As demonstrated above, any Chapter 93A claim premised on a fraudulent conveyance theory cannot survive summary judgment because Mass Printing has no reasonable expectation of proving that the transferred assets had a positive value. Mass Printing, in its brief, argues that Partners’ inadequate due diligence prior to the Agreement somehow constitutes an unfair and deceptive act against Mass Printing. There is indeed substantial evidence that Partners did little or no due diligence prior to entering into this Agreement and that they badly underestimated the operating losses they would suffer from taking over the operation of the Spence Centers, but this hardly constitutes an unfair and deceptive act against Mass Printing. Consequently, summary judgment must be allowed on Mass Printing’s claim against Partners under G.L.c. 93A, §11.

ORDER

For the reasons stated above, the defendant Partners’ motion for summary judgment is DENIED as to the plaintiff Mass Printing’s collection claim, and ALLOWED as to its claims of fraudulent conveyance under the Uniform Fraudulent Transfer Act, G.L.c. 109A and of a violation of the Massachusetts Consumer Protection Act, G.L.c. 93A, §11.

RKS also owned a Spence Center in Maryland.

It is interesting to note that, in Cargill, the Supreme Judicial Court upheld summary judgment on behalf of the creditor when all four factors were established. Id. at 360.